IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL CASUALTY CO,<br><br>   Plaintiff<br><br>   v<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant<br>_____/<br>UTE SISTRUNK,<br><br>   Plaintiff<br><br>   v<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant.<br>_____/ | No C 02-4891 VRW<br>Related to:<br>02-5292 VRW<br><br>ORDER |

   Plaintiffs Continental Casualty Co ("Continental") and Ute Sistrunk ("Sistrunk") move for leave to amend their respective complaints against defendant United States of America ("the government"). Docs ##52, 57. Specifically, Continental and Sistrunk wish to amend their complaints to seek damages in excess of the damages requested in their administrative claims.

1 Anticipating these motions, the government previously moved to
2 limit Continental's and Sistrunk's damages to the amount stated in
3 the administrative claims. Doc #45. Additionally, the government
4 opposes the motions for leave to amend. Doc #66. The court heard
5 oral argument on these motions on June 9, 2005. Based on the
6 parties' arguments and the applicable federal law, the court GRANTS
7 Continental's and Sistrunk's motions for leave to amend and DENIES
8 the government's motion as moot.

I

On January 29, 2000, Sistrunk sustained a low back injury while employed as a nursing assistant at Sunbridge Healthcare. Doc #53 (Cont Motion) at 2. She was initially treated conservatively with physical therapy, but when the pain persisted, orthopedist Dr Samuel Jorgenson recommended surgery. Doc #67 (Cheng Decl), Ex C at 2. On March 28, 2000, Sistrunk was involved in an automobile collision with a United States postal employee, David Tyler, who was operating a Postal Service vehicle. Id. Sistrunk claims that the auto accident not only made her back worse, but also caused neck pain and migrainous headaches. Id. In December 2000, Sistrunk underwent her first back surgery, a posterior lateral fusion at the L5-S1 level. Cont Motion at 2. Jorgenson conducted the surgery. Id.

Following the surgery, Sistrunk's condition improved, and she was able to work in a modified capacity from January 2001 to February 2002. Id. In October 2001, however, Sistrunk again experienced low back pain and saw Dr Barbara McQuinn regarding this condition. Doc #67 (Cheng Decl), Ex C at 1. McQuinn concluded

2

1 that due to low back pain, Sistrunk had developed secondary
2 depression, insomnia and difficulties with adequate pain control.
3 Id at 6.  Specifically, McQuinn concluded: "[A]t present a referral
4 for management of these issues at a pain management center would be
5 quite helpful here."  Id at 6-7.  Moreover, McQuinn concluded that
6 Sistrunk was "not yet Permanent and Stationary, particularly
7 because matters regarding the utility of, or even the necessity of,
8 further low back surgery are still apparently unresolved."  Id at
9 7.  McQuinn advised that "perhaps [Sistrunk's] pain medications and
10 her depression might be more easily managed, in conjunction with
11 her othopedic management by Dr Jorgenson, by referral of the
12 patient to a mutidisciplinary pain center."  Id.
13          McQuinn presently states that the pain management program
14 she recommended for Sistrunk in October 2001 was "a relatively low
15 level program."  Doc #79 (McQuinn Statement, 4/21/05) at 2.
16          In early March 2002, Sistrunk underwent two more
17 surgeries with Dr Jorgenson -- an anterior spinal fusion at L5-S1
18 and a removal of hardware at that spinal level.  Doc #45 (Gov Mot)
19 at 4.  Following these surgeries in March 2002, Continental and
20 Sistrunk filed separate administrative claims with United States
21 Postal Service Delivery Programs Support, as required by the
22 Federal Tort Claims Act (FTCA), 28 USC § 2675(a).  Cheng Decl, Ex D
23 and B.  Continental -- which had paid and continues to pay workers'
24 compensation benefits to Sistrunk on behalf of Sunbridge Healthcare
25 as a result of her injuries -- requested $150,000.  Cheng Decl, Ex
26 D.  Sistrunk requested $556,935.  Cheng Decl, Ex B.  When these
27 administrative claims were denied, Continental and Sistrunk filed
28 separate complaints in this court pursuant to the FTCA in October

3

and November 2002, respectively. Docs ##1, 1 (02-5292 VRW). Continental's and Sistrunk's complaints did not specify the amount of damages requested and thus the court will assume -- since Continental and Sistrunk now seek leave to amend -- that each complaint requests the same amount of damages listed in the administrative claim. Id.

On October 4, 2002, Dr Francis Pecoraro, a pain management specialist, documented Sistrunk's continued complaints of significant low back pain and referred her to Dr Hieu Ball for surgical consideration. Doc #62 (Cont Decl), Ex D. Ball performed surgery on Sistrunk in June 2003, replacing the hardware at the L5-S1 disc level. Cont Decl, Ex F.

On October 28, 2003, Sistrunk saw Dr Joseph Izzo and informed him that she felt worse after the June 2003 surgery with Ball. Doc #69 (Cheng Reply Decl), Ex E. Izzo concluded that "[g]iven [Sistrunk's] current state of affairs seven months after her surgery, it is highly unlikely that any significant recovery will occur, allowing her to pursue any form of meaningful employment." Id at 18. Izzo informs the court that "meaningful employment" meant "going back to her $10.00 per hour job." Doc #78 (Izzo Supp Statement, 5/1/05). He also explains that his November 7, 2003, statement was a "tentative view awaiting further evaluation" that was not intended to be a report but simply "a note to my file, not for dissemination." Id at 2.

In November 2004, Izzo concluded that Sistrunk would not be able to return to work, either at her previous job or any employment at all. Id. But Izzo was unable to provide Sistrunk with any opinion as to the "extent, cost or duration of her future

4

medical care in terms of pain management." Id. On October 27, 2004, Sistrunk sent a letter informing the government of the pain management care she was receiving. Doc #57 (Sist Mot), Ex 8. The letter stated that the future costs of such care would not be determined until December 15, 2004. Id at 2.

Shortly before the January 28, 2005, factual discovery cut-off date, Doc #43, Continental and Sistrunk informed the government that they would seek leave to amend their complaints to increase the damages requested in their administrative claims. Doc #66 (Gov Opp). Continental and Sistrunk cited Sistrunk's need for "lifetime pain management" as the basis for the proposed amendments. Id. In response, on February 1, 2005, the government filed a motion to limit damages to the amount stated in the administrative claims. Doc #45. Continental and Sistrunk responded by filing motions for leave to amend their complaints on March 30 and 31, 2005, respectively. Docs ##52, 56. Contrary to Civ L R 10-1, neither Continental nor Sistrunk supplemented their motion for leave to amend with a proposed amended complaint. In its memorandum, however, Continental states that it seeks to increase the amount of damages requested to $900,000, a $750,000 increase. Doc #52 at 2. Sistrunk's memorandum (Doc #56) fails to specify the amount of damages she will request if she is allowed to amend her complaint.

The government opposes. In its opposition, the government offers three arguments why the motions for leave to amend should be denied. First, the government argues that Continental and Sistrunk have not met their burden under 28 USC § 2675(b): they have not demonstrated that Sistrunk's current

5

injuries were not "reasonably foreseeable" when Continental and Sistrunk filed their administrative claims in March 2002. Gov Opp at 2. Next, the government argues that Continental and Sistrunk had numerous opportunities to seek leave to amend prior to filing the current motions in March 2005. Id. Specifically, the government argues that by waiting until January 2005 to reveal their intent to seek leave to amend, Continental and Sistrunk prejudiced the government because it did not have an adequate opportunity to conduct factual discovery regarding Sistrunk's need for pain management. Id; Cheng Decl at 3. Finally, the government argues that Continental and Sistrunk failed timely to disclose Sistrunk's need for lifetime pain management pursuant to FRCP 37(c)(1). Gov Opp at 3; Doc #68 (Gov Reply) at 3. The court addresses each of these arguments in turn.

## II

28 USC § 2675(b) of the FTCA provides that an

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon <u>newly discovered evidence not reasonably discoverable</u> at the time of presenting the claim to the federal agency, or upon allegation and <u>proof of intervening facts</u>, relating to the amount of the claim. (emphasis added).

The Ninth Circuit has held that for a plaintiff to be granted leave to amend a complaint under § 2675(b), "'[t]he allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed'." <u>Richardson v United States</u>, 841 F2d 993, 999 (9th Cir 1988) (quoting <u>Low v United States</u>, 795 F2d

466, 470 (5th Cir 1986)). "[W]hen a plaintiff does not know fully the medical extent of his injuries and expenses at the time of his administrative complaint, the exceptions to section 2675(b) are triggered." Powers v United States, 589 F Supp 1084, 1110 (D Conn 1984) (cited with approval in Richardson, 841 F2d at 999). Moreover, a known injury that worsens in "ways not reasonably discoverable by the claimant and his or her treating physician" at the time of the administrative claim can constitute "newly discovered evidence" or "intervening facts." Michels v United States, 31 F3d 686, 688 (8th Cir 1994). See also Cole v United States, 861 F2d 1261, 1262 (11th Cir 1988) (holding that "a reasonably based change in expectation as to the severity and permanence of an injury is newly discovered evidence within the meaning of section 2675(b).").

Applying these principles, the court concludes that when Continental and Sistrunk filed their administrative claims in March 2002, neither could have been aware of the permanence of Sistrunk's condition and the necessity of lifetime pain management. The government cites three cases in support of its argument that Continental's and Sistrunk's lifetime pain management claim was reasonably foreseeable at the time of their administrative claims. Docs ##45, 66, 68 (citing Hill v United States, 2002 WL 855909 (ND Cal April 26, 2002); Salcedo-Albanez v United States, 149 F Supp 2d 1240, 1244 (SD Cal 2001); Kielwen v United States, 540 F2d 676, 680 (4th Cir 1976)). The court, however, found these cases to be of little, if any, guidance in resolving the current motion. The extremely fact-sensitive nature of a § 2675(b) inquiry results in a plethora of cases that are of limited utility outside the facts of

7

each individual case.

As for actual evidence, the government relies heavily on Dr McQuinn's October 2001 report as proof that lifetime pain management costs were reasonably foreseeable when Continental and Sistrunk filed their administrative claims in March 2002. Docs ##45, 66, 68. In the report, McQuinn states that Sistrunk was "not yet Permanent and Stationary" and that pain management "would be quite helpful here." Doc #67 (Cheng Decl), Ex C at 7. In addition, McQuinn commented that the utility and necessity of further low back surgery was "still apparently unresolved." Id. The court finds these statements insufficient reasonably to inform Continental and Sistrunk of the need for <u>lifetime</u> pain management. Indeed, when she saw McQuinn in October 2001, Sistrunk had worked in a modified capacity since her December 2000 surgery. Moreover, Sistrunk continued to work until February 2002, four months after she saw McQuinn. Gov Opp at 5. More importantly, McQuinn's report provided no specifics regarding the necessity, level, or duration of pain management that she believed Sistrunk required; McQuinn concluded simply that pain management would be "quite helpful." Doc #67 (Cheng Decl), Ex C at 7.

Finally, McQuinn represents to the court that the pain management Sistrunk now requires is "a high level program and not one that was contemplated in my initial recommendation." McQuinn Statement at 2. Furthermore, McQuinn states: "In my opinion one could not have reasonably anticipated with any medical probability in October 2001 that this would have been [Sistrunk's] condition several years later, based on my evaluation of her in October 2001." Id. Because McQuinn was not aware of either the severity

8

or the permanence of Sistrunk's condition, it is safe to conclude that Continental and Sistrunk were also unaware.

The court concludes that Continental and Sistrunk have satisfied their burden of showing that Sistrunk's current condition was not reasonably foreseeable when they filed their administrative claims in March 2002. Accordingly, § 2675(b) does not bar their requests for leave to amend.

### III

While Continental and Sistrunk are not prohibited from amending under § 2675(b), the court must still inquire whether FRCP 15 bars the requested amendments. FRCP 15(a) provides in relevant part that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely granted when justice so requires." The Ninth Circuit directs district courts to apply Rule 15(a) with "extreme liberality." Morongo Band of Mission Indians v Rose, 893 F2d 1074, 1079 (9th Cir 1990) (citing DCD Programs, Ltd v Leighton, 833 F2d 183, 186 (9th Cir 1987)).

Courts have identified various factors that alone, or in combination, may justify denial of leave to amend a pleading. These factors are: (1) undue delay, (2) bad faith or dilatory motive, (3) futility of the proposed amendment, (4) prejudice to the opposing party and (5) repeated failures to cure deficiencies by previous amendments. William W Schwarzer, A Wallace Tashima, James M Wagstaffe, Federal Civil Procedure Before Trial § 8:416 (Rutter Group, 2005). The government explicitly argues that it will be prejudiced by Continental's and Sistrunk's proposed

9

1 amendments.  Docs ##66, 67.  The court finds, however, that the
2 government has implicitly raised the ground of undue delay.  The
3 court will examine these two issues separately beginning with undue
4 delay.

A

7 The Ninth Circuit has held that "delay alone does not
8 provide sufficient grounds for denying leave to amend."  <u>Hurn v
9 Retirement Fund Trust of Plumbing, Heating & Piping Industry of
10 Southern California</u>, 648 F2d 1252, 1254 (9th Cir 1981). "Where
11 there is lack of prejudice to the opposing party and the amended
12 complaint is obviously not frivolous or made as a dilatory maneuver
13 in bad faith, it is an abuse of discretion to deny such a motion."
14 <u>Howey v United States</u>, 481 F2d 1187, 1190-91 (9th Cir 1973).

15 In determining undue delay in the instant case, the
16 pertinent questions are: (1) when could Continental and Sistrunk
17 have reasonably known of the need for lifetime pain management and
18 (2) how much time passed between when Continental and Sistrunk
19 reasonably should have known and when they informed the government
20 of this knowledge?  First, the government argues that Continental
21 and Sistrunk knew of the permanence of Sistrunk's condition as
22 early as November 7, 2003, when Dr Izzo drafted his report.  Gov
23 Reply at 5.  Defendant relies on the following passage from Izzo's
24 report: "Given [Sistrunk's] current state of affairs seven months
25 after her surgery, it is highly unlikely that any significant
26 recovery will occur, allowing her to pursue any form of meaningful
27 employment."  Id.  Accordingly, the government asserts that
28 Continental and Sistrunk waited more than one year, until January

10

1 2005, to inform it of their intention to seek leave to amend the
2 amount of damages requested.  Id.  The court disagrees.
3        First, Dr Izzo's report is far from the "employment death
4 knell" that the government portrays it to be.  Izzo represents to
5 the court that by stating that Sistrunk could "not pursue
6 meaningful employment" he meant "going back to her $10.00 per hour
7 job."  Izzo Supp Statement at 2.  Izzo believed that it was still
8 possible for Sistrunk to return to "some form of sedentary work."
9 Id.  Not until <u>November 2004</u> did Izzo inform Continental and
10 Sistrunk that Sistrunk was not fit for any type of employment.  Id.
11 Even at this point, Izzo was still unable to provide plaintiff with
12 any opinion as to the "extent, cost or duration of her future
13 medical care in terms of pain management."  Id.
14        Dr Pecoraro represents to the court that "not until
15 approximately more than a year" after Sistrunk's June 2003 surgery
16 did it become clear to him that Sistrunk's condition had evolved to
17 a point of permanence -- precluding her from "any gainful
18 employment" and requiring ongoing medical treatment "<u>for the
19 remainder of her life with little hope for significant
20 improvement</u>."  Doc #78 (Pec Statement) at 3. (emphasis in
21 original).
22        Second, although Continental and Sistrunk did not
23 officially inform the government of their intention to seek leave
24 to amend damages until January 2005, Sistrunk did inform the
25 government on October 27, 2004, that "costly" "pain management was
26 being carried out utilizing medications."  Sist Motion, Ex 8 at 1.
27 Moreover, Sistrunk stated that although costs for this treatment
28 would not be calculated until December 15, 2004, costs could range

11

from $3,000 to $5,000 per month.  Id at 2.

The court concludes that the earliest Continental and Sistrunk became aware of Sistrunk's permanent condition and need for lifetime pain management was October or November 2004.  And it appears as soon as Sistrunk knew of the high costs of future pain management, she informed the government via a letter.  Moreover, Continental and Sistrunk had to wait until December 15, 2004, to find out the exact cost of the future pain management.  Accordingly, the court concludes there was no undue delay by Continental and Sistrunk in currently seeking leave to amend.

B

Prejudice to the opposing party is "by far the most important and most common reason for denying leave to amend." Federal Civil Procedure Before Trial at § 8:424 (emphasis in original).  Absent prejudice, or a strong showing of any of the remaining reasons for denying leave to amend, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v Aspeon, Inc, 316 F3d 1048, 1052 (9th Cir 2003).  Where a motion to amend is brought late in the litigation, however, delay may prejudice the opposing party's ability to respond to the proposed amendment or to prepare for trial.  Federal Civil Procedure Before Trial at § 8-424.1.

"[T]o justify denial of leave to amend, the prejudice must be substantial." Federal Civil Procedure Before Trial at § 8-424.2 (emphasis in original) (citing Morongo Band, 893 F2d at 1079 (citing inordinate delay, prejudice, and potential futility of the claims in affirming the denial of plaintiff's motion for leave to

12

amend)).  Most important for the present motion, the need for additional discovery is insufficient by itself to deny a proposed amended pleading.  <u>United States v Continental Illinois National Bank & Trust</u>, 889 F2d 1248, 1255 (2nd Cir 1989); <u>Genentech, Inc v Abbott Laboratories</u>, 1989 US Dist LEXIS 9311, *5 (ND Cal 1989) (Patel, J).

Because Continental and Sistrunk did not move for leave to amend until after the January 28, 2005, discovery cut-off date, the government insists that it was prejudiced because it did not have "an adequate opportunity to conduct factual discovery."  Cheng Decl at 3.  This hardly rises to the level of substantial prejudice.  First, the government arguably did have the opportunity to conduct discovery of lifetime pain management after it received Sistrunk's October 27, 2004, letter informing it of Sistrunk's costly treatment.  Second, even if the government had not had this opportunity, the prejudice here is not so substantial to justify denial of Continental's and Sistrunk's motions for leave to amend.  See <u>Morongo Band</u>, 893 F2d at 1079 (holding as substantial a two-year delayed amended complaint that "would have greatly altered the nature of the litigation and would have required the defendants to have undertaken, at a late hour, an entirely new course of defense").  In the instant case, additional discovery would enable the government to examine further the lifetime pain management costs.  See <u>Continental Illinois National Bank & Trust</u>, 889 F2d at 1255; <u>Genentech, Inc</u>, 1989 US Dist LEXIS 9311 at *5.  For these reasons, Continental's and Sistrunk's motion to amend can be granted without prejudicing the government.

**IV**

The final issue for resolution is whether Continental's and Sistrunk's motions for leave to amend should be barred as untimely disclosed under FRCP 37(c)(1). Rule 37(c)(1) provides in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

The duty to supplement or correct prior disclosures or discovery responses arises "if the party learns that in some material respect the information disclosed is incomplete or incorrect." FRCP 26(e)(1)-(2). A party must supplement or correct its early disclosures "at appropriate intervals" and amend incomplete or incorrect discovery responses "seasonably." Id. "Supplementations * * * should be made * * * with special promptness as the trial date approaches." Notes on the 1993 Amendments to FRCP 26(e).

As in the previous section, the government's Rule 37(c)(1) argument is based on the assumption that Continental and Sistrunk knew as of November 7, 2003, the severity and permanence of Sistrunk's condition. Gov Reply at 5. The court, however, has rejected this argument; Dr Izzo did not inform Continental and Sistrunk of Sistrunk's permanent condition until November 2004. Izzo statement at 2. Continental and Sistrunk informed the government in October 2004 of Sistrunk's pain management treatment and of their intention to amend in January 2005. Accordingly, Continental and Sistrunk did not violate Rule 37(c)(1).

On June 8, 2005, the government filed a notice of recent decision directing the court's attention to <u>Evenflow Plumbing</u>

14

1  **Company, Inc v Pacific Bell Directory**, 2005 WL 954469 (ND Cal April
2  26, 2005) (Laporte, J).  (02-5292 VRW) Doc #54.  The government
3  asserts that Judge Laporte's decision in <u>Evenflow</u> supports its
4  argument that Continental and Sistrunk failed timely to supplement
5  or correct prior disclosures as required by Rule 26(e)(1).  Id.

6  In <u>Evenflow</u>, plaintiff provided Judge Laporte with new
7  evidentiary exhibits on April 18, 2005, <u>the day of trial</u>.  2005 WL
8  954469 at *1.  These exhibits contained mathematical calculations
9  of plaintiff's alleged actual damages based upon a exhaustive
10 review of company contracts; evidence that had not been timely
11 presented to the court or defense counsel.  Id.  Such a submission
12 explicitly violated Judge Laporte's Case Management and Pretrial
13 Order which required all exhibits to be submitted to the court no
14 later than March 9, 2005.  Id.  Moreover, plaintiff wanted to use
15 this untimely exhibit to aid the testimony of a witness who was
16 <u>already on the stand</u>.  Id.  Judge Laporte noted that plaintiff had
17 failed to give this complex new exhibit to defense counsel until
18 <u>three</u> days prior to the trial, thus preventing defendant from
19 adequately preparing for cross-examination.  Id at 2.  Accordingly,
20 Judge Laporte struck any testimony based on the untimely evidence
21 and excluded the two exhibits based upon this evidence.  Id.

22 The court finds <u>Evenflow</u> distinguishable in several
23 important respects from the present case.  First, the <u>Evenflow</u>
24 plaintiff specifically violated Judge Laporte's pretrial order;
25 Continental and Sistrunk have not violated any court orders.
26 Second, <u>Evenflow</u> plaintiff's violation substantially prejudiced
27 defendant by preventing an effective cross-examination <u>at trial</u>; a
28 prejudice that could not be remedied.  In the instant case, any

15

prejudice caused by Continental's and Sistrunk's motion for leave to amend can be remedied by additional discovery.

V

In sum, the court GRANTS Continental's and Sistrunk's motions for leave to amend (Docs ##52, 57) and DENIES as moot the government's motion to limit damages to the amount stated in the administrative claim. Doc #45. To remedy any prejudice that might befall the government based on the granting of Continental's and Sistrunk's motions for leave to amend, the court will reopen factual discovery for the government. Specifically, the government will be permitted to pursue discovery regarding Sistrunk's need for lifetime pain management. This factual discovery should be concluded on or before September 30, 2005.

The parties are ORDERED to appear on October 18, 2005, at 9am for a case management conference and to serve and file a joint status report not to exceed five pages at least ten days in advance of the case management conference. If these dates are inconvenient, counsel are directed to contact the courtroom deputy Cora Delfin at (415) 522-2039 to arrange alternative dates.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge